185 Ga. App. 191 (1987)
363 S.E.2d 586
NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY et al.
v.
BAILEY.
75035.
Court of Appeals of Georgia.
Decided November 19, 1987.
Rehearing Denied December 4, 1987.
Thomas G. Sampson, Myra H. Dixon, for appellants.
Jesse B. Beasley, Jr., for appellee.
BENHAM, Judge.
Appellee Shenelby Bailey and Robert E. Stewart paid a premium to appellant North Carolina Mutual Life Insurance Company (hereinafter "insurance company") on March 9, 1984, for family insurance coverage which included an application for a life insurance policy on Robert E. Stewart. The premium was computed by the soliciting agent at $44.78, and a conditional receipt was given to appellee in return for payment of the premium. The policy was to be delivered to the insured in four to five weeks from March 9, 1984. After the passage of several months, appellee, having received no communication from the insurance company since the date of premium payment, contacted the insurance company and was told that the premium had been miscalculated and that an additional $2.80 was required. The amount was never paid, and Robert E. Stewart died on July 10, 1984, in a work-site accident. When the insurance company refused appellee's demand for payment on the policy, she filed suit. Both sides moved for summary judgment, the trial court granted partial summary judgment to appellee on the issue of coverage, and this appeal by the insurance company followed.
1. Appellant contends that the trial court erred in granting summary judgment to appellee on the issue of coverage. The application for insurance in the case sub judice contained the following language: "It is further agreed that the Company shall incur no liability under this application until it has been received and approved at the Home Office of the Company and the premium actually paid to and accepted by the Company and the policy has been issued and delivered, all during the lifetime and good health of the Proposed Insured; except that if the full first premium is paid in advance to an authorized agent of the Company while the Proposed Insured is in good health and the receipt on the form attached hereto delivered to the Appellant, then the liability of the Company shall be as stated in the receipt."
The receipt read, in pertinent part, as follows: "1. If a full first premium in accordance with the published rates of the Company for the form of the policy applied for has been paid at the time of making such application, and such payment is indicated thereon, the insurance subject to the terms and conditions of the policy contract applied for and in use by the Company at this date, shall take effect on the date hereof if non-medical or if medical examination is required, from the date of completion of the examination, provided the application is completed as agreed therein and provided the applicant is on this date a risk acceptable to the Company under its rules, limits and *192 standards, on the plan, for the amount and at the rate of premium declared paid, and provided further that the applicant is on this date in good health; otherwise, the payment evidenced hereby shall be returned upon demand and surrender of this receipt."
"The general rule is that an application for insurance, even with the concurrent prepayment of premiums, creates no binding contract of insurance until the insurer manifests its acceptance. [Cits.]" Atkinson v. American &c. Life Ins. Co., 165 Ga. App. 102 (1) (299 SE2d 600) (1983). Accord Thomas v. Union &c. Ins. Co., 168 Ga. App. 267 (308 SE2d 609) (1983), aff'd, 252 Ga. 259 (1) (312 SE2d 333) (1984). An exception to the general rule exists where, as here, the conditional receipt provided that coverage would begin "[if] a full first premium in accordance with the published rates of the Company for the form of policy applied for has been paid at the time of making such application." See Jones v. North Car. &c. Ins. Co., 122 Ga. App. 383 (177 SE2d 199) (1970). Unquestionably, an intended full premium of $44.78 was quoted by the agent and collected before the conditional receipt was given. Citing Thomas v. Union &c. Ins. Co., supra, appellant contends that the premium collected was at variance with the "published rates" and therefore no coverage existed. This argument is of no moment since in Thomas, there was a specific provision in the application which stated that "[n]o insurance shall take effect until a policy is issued and delivered to the Owner and the full premium paid ..." Id. at 267. There was no conditional receipt with language similar to the language here.
The situation here is governed by our ruling in Jones v. North Car. &c. Ins. Co., supra, where we found to be binding a conditional receipt identical to the one here. We hereby hold that when, as here, an insurance company conditions coverage upon full payment of the first premium and a premium is quoted and collected by its agent, coverage is effective as of that date even though the amount collected is less than that required by the company's rate schedule, as long as the amount quoted and collected is not so substantially at variance with the rate schedule as to put a reasonable person on notice as to its inadequacy. Since the difference between the collected and required premium was only $2.80, it was not substantially at variance with the rate schedule. Therefore, the trial court was correct in ruling that, as a matter of law, the conditional receipt constituted a binding contract of insurance. See Guest v. Kennesaw Life &c. Ins. Co., 97 Ga. App. 840 (104 SE2d 633) (1958), in which the partial payment of an annual premium with the policy application was held to be sufficient to cover the insured between the acceptance of the risk and the delivery of the policy.
2. Appellant also contends that the trial court erred in deciding that cancellation of the policy had not taken place; therefore, our *193 analysis does not end here. We must now consider whether conduct subsequent to March 9, 1984, resulted in a cancellation of the policy, and, if so, when did cancellation take place? There is some dispute between the parties as to when and under what circumstances the additional premium of $2.80 was to be paid. There is also some dispute as to exactly what was said by the parties regarding the effect nonpayment of the additional premium would have. However, there is no dispute that the home office of the insurance company did not issue a written rejection of coverage for failure to pay the additional premium until May 1984, and that the rejection, along with the premium refund, was sent to the district office rather than to the insured. The notice of rejection and the refund check were not sent to the insured until after his death on July 10, 1984.
The burden is on the party asserting cancellation of an insurance policy to prove it. St. Paul Fire &c. Ins. Co. v. C. I. T. Corp., 55 Ga. App. 101, 103 (189 SE 390) (1937). Where there are ambiguities as to the adequacy of notice, those ambiguities are to be resolved in favor of the insured and against the insurer. New Amsterdam Cas. Co. v. Russell, 102 Ga. App. 597 (2) (117 SE2d 239) (1960). Where there is neither a regulatory nor a policy provision outlining the method of cancellation notice, the notice will be deemed insufficient when it does not positively and unequivocally state that cancellation is taking place. Chambers v. Wash. Nat. Ins. Co., 66 Ga. App. 509, 511 (17 SE2d 899) (1941).
Since no one contends that the agent of the insurance company was designated by the insurer as agent for receiving cancellation, notice to the agent without notifying the policyholder is of no moment and the cancellation is ineffective. See Nat. Union Fire Ins. Co. v. Macon &c. Lumber Co., 24 Ga. App. 726 (102 SE 180) (1920). See also Union Fire Ins. Co. &c. v. Stone, 141 Ga. App. 49 (152 SE 146) (1929). Even more important is the failure of appellant to return the premium to the insured along with any notice of cancellation. Balboa Ins. Co. v. Hunter, 165 Ga. App. 273 (299 SE2d 91) (1983). Accord Union Fire Ins. Co. &c. v. Stone, supra. Hence, appellant's enumeration of error is without merit.
3. Appellee's demand for frivolous appeal damages has no merit.
Judgment affirmed. Banke, P. J., and Carley, J., concur.