SOUTHERN PILOT INSURANCE
CO., Plaintiff,

v.

CECS, INC., et al., Defendants,

v.

Michael Dillon and Little and Smith, Inc., Third–Party Defendants.

Civil Action No. 1:11–CV–03863–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed April 19, 2013.

Adam Charles Joffe, R. Tyler Bryant, Robert Malcolm Darroch, Stephanie F. Glickauf, Goodman McGuffey Lindsey & Johnson, Atlanta, GA, for Plaintiff.

James Glenn Richardson, Talley Richardson & Cable, P.A., Dallas, GA, Lawrence J. LoRusso, Rebecca L. Sample, LoRusso Law Firm, P.C., Jennifer Suzanne Ivey, Linley Jones, Linley Jones, P.C., Atlanta, GA, for Defendants.

Brenton Sewell Bean, Christine L. Mast, Hawkins Parnell Thackston & Young, LLP, Atlanta, GA, for Third–Party Defendants.

### ORDER

AMY TOTENBERG, District Judge.

## I. INTRODUCTION

This is an insurance coverage dispute. Plaintiff Southern Pilot Insurance Company ("Southern Pilot") filed this instant action seeking a declaration that, because it properly cancelled the subject car insurance policy, the policy was not in force at the time of a tragic accident. Thus, Southern Pilot argued, it has no duties to defend or indemnify the putative insured, Defendant CECS, Inc. ("CECS") and its employee Defendant Jason Chatham (collectively, the "CECS Defendants").

The CECS Defendants moved for partial summary judgment arguing that the notice of cancellation failed to conform to Georgia's law regarding proper insurance cancellation notice. (Doc. 38.) According to the CECS Defendants, this failure rendered the attempted cancellation void, and therefore the subject insurance policy was in force at the time of the accident.

In their initial briefing on the CECS Defendants' motion, the parties referred only to a document entitled, "Notice of Intent to Cancel" ("Notice of Intent"). However, on May 18, 2012, Southern Pilot filed a supplemental response, attaching a document entitled, "Notice of Cancellation" and asserting that it sent this notice to CECS along with its Notice of Intent. (Doc. 60.) The Court entered an order notifying the parties that it would consider the Notice of Cancellation in its assessment of the CECS Defendants' partial summary judgment motion, and granted the CECS Defendants leave to file a response. The CECS Defendants responded, appearing to deny that CECS ever received this Notice of Cancellation.

On January 25, 2013, 15 F.Supp.3d 1284, 2013 WL 8335718 (N.D.Ga.2013), the Court denied the CECS Defendants' motion for partial summary judgment. (Doc. 70.) The Court held that the Notice of Cancellation met the requirements under Georgia law for an insurance policy cancellation notice. (*Id.* at 8.) Based on the evidence in the record, the Court also found that a genuine issue of fact existed as to whether Southern Pilot actually sent this Notice of Cancellation to CECS. (*Id.*) Thus, the Court denied the CECS Defendants' motion without reaching the closer question of whether the Notice of Intent, alone, would satisfy Georgia legal requirements for insurance cancellation notices. (*Id.* at 8 n. 5.)

The Court then directed the parties to mediation. On March 29, 2013, the parties filed a joint report on the status of mediation ("Joint Report"). (Doc. 75.) The parties indicated that they had reached an impasse. In their Joint Report, the parties sought clarification of the Court's posi-

tion on whether the Notice of Intent was an effective notice to cancel the subject policy in accordance with Georgia law, without regard to the Notice of Cancellation. The Court construed this Joint Report as a motion for clarification, which the Court grants, providing the following clarification.

## II. FACTUAL BACKGROUND [1]

Southern Pilot issued a policy of commercial automobile insurance to CECS. (Pls'. Resp. Defs.' Statement Undisputed Facts (Doc. 44) ¶ 1; Chatham Aff. (Doc. 38–3) Ex. A.) [2] The policy period was from March 1, 2011 to March 1, 2012. (Doc. 38–3 Ex. A at 1.)

In August of 2011, Southern Pilot/General Casualty [3] sent to CECS a document entitled "Notice of Intent to Cancel" ("Notice of Intent"). (Doc. 44 ¶ 5; Doc. 38–3 Ex. B at 1–2.) This Notice of Intent was dated August 8, 2011. (Doc. 44 ¶ 5; Doc. 38–3 Ex. B.) CECS received this on August 17, 2011. (Id.; Doc. 38–3 Ex. B.) This Notice of Intent stated as follows:

> You are notified that the policies indicated with asterisk (* *) below will cancel in accordance with the terms and conditions of the policy unless the "minimum payment due" is received at the Home Office of the company prior to the effective date of the cancellation listed below.

(Doc. 38–3 Ex. B.) The Notice of Intent referenced the subject policy with an asterisk and stated that the "Cancellation Effective" date for that policy was August 23, 2011. (Id.) Finally, the Notice of Intent included a remittance indicating that the "minimum due" was $1,277.48. (Id.)

Along with the Notice of Intent, Southern Pilot contends that it sent CECS a notice of cancellation ("Notice of Cancellation"), also dated August 8, 2011. (Doc. 60–1 at 8–10 (Ex. J).) The Notice of Cancellation showed the "EFFECTIVE DATE OF NOTICE" as August 23, 2011. (Id. at 9.) In a section entitled "Cancellation," the document stated, "You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above." (Id.) Finally, the Notice of Cancellation indicated that the reason for cancellation was "Nonpayment of premium." (Id.)

As mentioned, a genuine question of fact exists as to whether Southern Pilot sent this Notice of Cancellation to the CECS Defendants. There is no genuine issue of fact, however, as to whether Southern Pilot actually sent the Notice of Intent to CECS.

---

1. This factual background does not represent actual findings of fact. Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy. As this matter is before the Court on a motion for clarification of the Court's Order denying the CECS Defendants' motion for partial summary judgment, the Court derives these facts from the evidence in the record, with all factual inferences in the light most favorable to Southern Pilot, the party opposing the motion for partial summary judgment. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir.2007) (observing that, in connection with summary judgment,

courts must review all facts and inferences in light most favorable to non-moving party).

2. The parties do not dispute that the relevant portions of the policy for purposes of the CECS Defendants' motion for partial summary judgment are attached as Exhibit A to Jason Chatham's affidavit (Doc. 38–3 Ex. A). (Doc. 44 ¶ 1.)

3. Though it is not clear precisely what the relationship is between General Casualty Insurance Company and Southern Pilot, this relationship is not material for purposes of the pending summary judgment motion.

The undisputed evidence before the Court also shows the following. Southern Pilot sent CECS a letter entitled "Cancellation Memo," dated August 23, 2011. (Doc. 44 ¶ 7.) On August 24, 2011, a day after the purported cancellation, CECS transmitted an electronic check for premium payment to General Casualty. (Doc. 44 ¶ 6.) The amount of this check was removed from the CECS account on August 26, 2011. (*Id.*) Then on September 6, 2011, while operating a dump truck owned by CECS, Defendant Jason Chatham was involved in a motor vehicle collision. (Doc. 38–3 ¶ 6.) Shortly thereafter, on November 9, 2011, Southern Pilot filed this instant action seeking a declaration that the subject policy was not in force at the time of the accident. (Doc. 1.)

## III.  ANALYSIS

▮    For the reasons expressed below, the Court determines that Southern Pilot's Notice of Intent fails to satisfy insurance cancellation notice requirements under Georgia law.[4] O.C.G.A. § 33–24–44 provides that, in order to cancel an insurance policy for failure of the named insured to pay its premiums on time, an insurer must provide written notice at least 10 days prior to the effective date of cancellation. O.C.G.A. § 33–24–44(d). This statute requires that the written notice state "the time when the cancellation will be effective" but does not dictate any particular form for the notice. *Id.* Rather, such notices must conform to a standard set by Georgia case law: "the notice will be deemed insufficient when it does not positively and unequivocally state that cancel-

lation is taking place." *N.C. Mut. Life Ins. Co. v. Bailey*, 185 Ga.App. 191, 363 S.E.2d 586, 589 (1987); *accord Reynolds v. Infinity Gen. Ins. Co.*, 287 Ga. 86, 694 S.E.2d 337, 341 (2010); *Chambers v. Washington Nat. Ins. Co.*, 66 Ga.App. 509, 17 S.E.2d 899, 901 (1941) ("The notice is not sufficient, however, if it is equivocal, or merely states a desire or intention to cancel."). Put another way, the notice "must be a clear and unambiguous statement to the insured that coverage is being terminated." *Reynolds*, 694 S.E.2d at 341 (citing *Bailey*, 363 S.E.2d at 589). Issues of sufficiency may arise when the insurer provides the insured, along with a notice of cancellation, an option to continue coverage.

Until recently, "every time that a Georgia appellate court has considered the issue, it has declined to give effect to a notice which ... states that an insurance policy will be cancelled on a particular date unless premiums due are paid prior to that date." *Reynolds*, 694 S.E.2d at 344 (Carley, J. dissenting) (citing, *inter alia*, *Petersburg Sav. & Ins. Co. v. Manhattan Fire Ins. Co.*, 66 Ga. 446 (1941); *Bailey*, 363 S.E.2d 586; *Chambers v. Washington Nat. Ins. Co.*, 66 Ga.App. 509, 17 S.E.2d 899 (1941)). *But see Southern Ins. Co. v. Walker*, 184 Ga.App. 369, 361 S.E.2d 502 (1987) (holding that cancellation notice was valid even though it left open the possibility of *reinstatement* of the policy in part because the failure to pay the premiums when due had already occurred); *Daniels v. Allstate*, 162 Ga.App. 758, 293 S.E.2d 39 (1982) (suggesting that a notice of cancellation was valid despite stating "that the

---

**4.** This determination is, of course, dicta as the Court concluded, on the CECS Defendants' motion for partial summary judgment, that a question of fact exists as to whether Southern Pilot sent CECS the Notice of Cancellation, a notice that does satisfy Georgia requirements for insurance cancellation notices. *See Int'l*

*Ass'n of Machinists and Aerospace Workers, Seminole Lodge 971 v. United Techs. Corp.*, 778 F.2d 1562, 1564 n. 1 (11th Cir.1986) (defining "obiter dictum" as a discussion that is "outside the scope of the holding and simply an expression of opinion with no precedential value.").

policy would be cancelled for non-payment of premium if the [premium amount] was not received by" a certain date).

In 2010, however, the Georgia Supreme Court held that a conditional notice of cancellation was nonetheless effective. *Reynolds*, 694 S.E.2d at 341–42. The court reasoned that "[t]he mere fact that the notice contains an option for the insured to avoid the imminent cancellation does not alter the clear statement to the policy holder that coverage is being terminated because the premium was not timely paid." *Reynolds*, 694 S.E.2d at 341. The court reaffirmed the principle, however, that the statement of cancellation must be "a clear and unambiguous statement to the insured that coverage is being terminated." *Id.* The court then held that the notice at issue satisfied this standard, focusing on two facts.

First, the notice in *Reynolds* unequivocally stated that it was cancelling the policy because the insured had failed to pay premiums when due. *Id.* at 338–39. It stated upfront, "AS OF 07/10/2006, WE HAVE NOT RECEIVED YOUR PAYMENT." *Id.* at 338. It also displayed three times that the Notice was in response to the non-payment of premiums, once in the header stating, "CANCELLATION NOTICE, NON–PAYMENT OF PREMIUM," once immediately above the body stating "NONPAYMENT NOTIFICATION" and a third time stating "NON PAY NOTICE," stamped in large letters. *Id.* at 338–39. The notice unequivocally conveyed an impending cancellation of the policy, despite containing some conditional language: "YOUR INSURANCE POLICY WILL CEASE AT 11:59 PM ON THE CANCELLATION DATE MENTIONED ABOVE, UNLESS WE RECEIVE YOUR PAYMENT BEFORE THE CANCELLATION DATE." *Id.* at 338.

■ Second, the insurance company sent its cancellation notice after the premium was past due, rather than before. The court distinguished between actual notices of cancellation and mere demands for premium payment, cloaked in cancellation language. *Id.; see, e.g., Pennsylvania Nat. Mut. Cas. Ins. Co. v. Person*, 164 Ga.App. 488, 297 S.E.2d 80 (1982) ("A notice of cancellation which states that a policy will be cancelled on a specified date unless premiums due are paid prior to that date, is not a notice of cancellation, but merely a demand for payment."); *State Farm Mut. Auto. Ins. Co. v. Drury*, 222 Ga.App. 196, 474 S.E.2d 64, 68 (1996) (citing *Person*, 297 S.E.2d 80). Thus, one distinguishing characteristic of a valid cancellation notice is that the insurer sends such notice *after* the event triggering the cancellation.

> In the instant case the notice of cancellation was not given to the insured upon her failure to pay the premium when due. Rather, notice of cancellation was given before the premium was due. There was no reason to cancel the policy until after the premium became due and payable. Thus, the insured is entitled under statute to notice of cancellation for failure to pay her premium when due and at least a ten day grace period prior to the effective date of the cancellation

*Person*, 297 S.E.2d at 82; *accord Reynolds*, 694 S.E.2d at 341 (explaining that a putative cancellation notice containing a premium option sent prematurely would render the notice ambiguous and "well short of the required positive and unequivocal statement of the present intent to cancel insurance coverage"); *Timely Entm't Int'l, Inc., et al. v. State Farm Fire & Cas. Co.*, 208 Ga.App. 467, 430 S.E.2d 844, 846 (1993) ("A purported notice of cancellation (for nonpayment of premium) sent before the premium is due merely constitutes a demand for payment, and is ineffective to cancel the policy." (citing

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Person,* 164 Ga.App. 488, 297 S.E.2d 80 (1982))). Thus, in Georgia, both notices of cancellation and demands for payments may include options to continue coverage if premiums are paid. Notices of cancellation, however, must come *after* the default has occurred.

In summary, the court in *Reynolds* held that a notice of cancellation sent after the insured misses a premium payment will not be ineffective merely because it provided an opportunity to continue coverage by paying the premium, so long as the notice unequivocally states that the insurance policy will be cancelled on a date certain and identifies the reason for cancellation as "nonpayment of premiums." *Reynolds,* 694 S.E.2d at 341.[5]

■ The Notice of Intent here, like the one in *Reynolds,* presents a "close case." *Id.* at 343 (Nahmias, J., concurring). Nonetheless, the Court finds that this Notice of Intent, standing alone and in the factual context here, would be insufficient to effectively cancel the policy. Unlike the notice in *Reynolds,* the Notice of Intent here never states unequivocally that the policy will cancel for "non-payment of premiums." The Court recognizes that the Notice of Intent implies that premiums are due, but the notice does not unequivocally state that premiums are *past* due. In addition, the Notice of Intent sent to CECS in August of 2011 refers to itself not only as a "Notice of Intent to Cancel" but also suggests it is a "billing" notice, stating twice that the "Date of Billing" is August 8, 2011. Thus, despite the "intent to cancel" language, in the factual context presented here, one could reasonably understand this notice as a bill, due on or before August 23, 2011. Moreover, because "ambiguities as to the adequacy of [a cancellation] notice ... are to be resolved in favor of the insured and against the insurer," *Bailey,* 363 S.E.2d at 589, the Court finds that, in the factual context here, the Notice of Intent, by itself, is insufficient under Georgia law to cancel the subject policy.[6] *See also Chambers,* 17 S.E.2d at 901 ("[I]t is well settled that in [a cancellation] notice all ambiguities must be resolved in favor of the insured.").

Nonetheless, as noted in the Court's Order on the CECS Defendants' motion for partial summary judgment, (Doc. 70), there remains a genuine dispute of fact as to whether Plaintiff also sent the Notice of Cancellation, a notice this Court has found sufficient to cancel the subject policy under Georgia law.[7] Viewing the evidence in the light most favorable to the Plaintiff as

---

5. In addition, pursuant to O.C.G.A. § 33–24–44(d), the notice must be provided at least 10 days prior to the effective date of cancellation.

6. The Court also notes that neither party fully developed their arguments about whether CECS's August premium payment was in fact past due. (*See id.* at 8–10.) If the premium payment was *not* past due, this case would no longer be a close one as *Person,* discussed above, would control. *See also Reynolds,* 694 S.E.2d at 341–42 ("[T]he premium payment option in the context of the premature statement regarding termination of coverage rendered the document, at best, ambiguous, and well short of the required positive and unequivocal statement of the present intent to cancel insurance coverage." (discussing *Person* )).

7. The Court recognizes that were this case to go to trial, the burden would be on Plaintiff insurance company to prove that it actually sent the Notice of Cancellation. *See Bailey,* 363 S.E.2d at 589 ("The burden is on the party asserting cancellation of an insurance policy to prove it."); *see also Drury,* 474 S.E.2d at 66 ("In order to create a presumption that the insured received the premium due notice, the law requires proof that the notice was placed in an envelope properly addressed to the insured's last known address, with correct postage affixed, and duly mailed in the United States Post Office.").

non-movant, *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Court denied the CECS Defendants' motion.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the parties motion for clarification [Doc. 75]. The Court affirms its decision to deny the CECS Defendants' motion for partial summary judgment (Doc. 38), clarifying its prior discussion regarding Plaintiff's Notice of Intent to Cancel. The Court **ORDERS** the parties to return to private mediation with mediator Tom Tobin of Henning Mediation and to conclude mediation no later than May 20, 2013. The clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this matter during the course of mediation.[8] The parties are **DIRECTED** to file by May 21, 2013 either a (1) joint report stating that all matters in this case have been resolved in mediation along with a stipulation of dismissal or (2) a consent motion to reopen the case. Should the parties fail to resolve all disputes during mediation, the parties are **DIRECTED** to prepare and sign a proposed consolidated pretrial order no later than May 31, 2013.

---

8. Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner. The parties may move to reopen an administratively closed case at any time.